By the Court. Oakley, Ch. J.
Whatever may be the true construction of the provision in the Revised Statutes, which permits an inquiry into the consideration of a sealed instrument, it has, assuredly, never been construed, nor do we think that it can reasonably be construed, as altering the rule of the common law, by which a release under seal operates, per se, as an extinguishment of the debt to which it refers; and although liable to be avoided by proof that it was obtained by fraud or duress, is not open to contradiction by parol evidence. There is a wide distinction, as Mr. Justice Cowen, in delivering the judgment of the Court of Errors, in McCrea v. Purmort, (16 Wend. 474,) has well shown, between a release and a receipt. The first, by its own operation, extinguishes a pre-existing right, and therefore cannot be contradicted or explained by parol; the second, has never the effect of destroying a subsisting right, but is merely evidence of a fact,—the fact of payment,—and therefore, like all other facts given in evidence, may be refuted or explained. But the construction of a release that has here been contended for, would abolish this distinction. According to this construction, every release which, like that be *298 fore us, is founded upon a merely nominal consideration, would be void upon its face; and every release founded upon a pecuniary consideration, less in amount than the debt it purports to discharge, would be void as to the balance it admits to be unpaid. That this would be contrary not only to the understanding of the bar, but to the uniform practice in our courts of justice during the long period that has elapsed since the Revised Statutes have been in force, must be known to all who have any experience in our profession. We doubt whether a single case has occurred in which a release, admitted in evidence as unquestionably valid, has been founded upon the actual and full satisfaction of the debt to which it related.
We have, therefore, no difficulty in holding that the release now in question, although it states only a nominal consideration, was operative and valid; and that its legal effect was to extinguish the debt and the note, as evidence of that debt, upon which this action ■ is founded. „
It follows, necessarily, that the proof that was offered, so far as it tended to show that the release was founded on any other consideration than that which it states, as contradicting both the terms and the legal effect of the instrument, was properly rejected. The offer to prove that, prior to the execution of the release, and as a consideration for its execution, Tappin promised to pay the note within two years, was plainly of this character.
The only questions, then, are, whether the defendant, Tappin, was bound by his subsequent promises to pay the note; and if so, whether, under the pleadings, evidence of these promises could properly be received, to warrant a recovery by the plaintiff in the present action.
We shall concede, without meaning to affirm, that when the consideration of the release of a debt is nominal, or less than the siim confessed to be due, the moral obligation of the debtor to pay the debt, or the residue of the debt, is exactly the same as that of a debtor who has obtained a discharge under a bankrupt or insolvent law, in which cases, it is fully settled, that the moral obligation is a sufficient consideration for a subsequent promise of payment. We shall concede that the legal effect of the promise, in all the cases, is the same, and our decision will be governed by the analogy that we thus admit to exist.
*299 What, then, is the legal effect of the promise of a debtor to satisfy a debt from which he has been wholly discharged by the operation of a bankrupt or insolvent law? If the effect is the same as that of a promise to satisfy a debt, barred by the Statute of Limitations, it cannot be denied that the proof that was offered upon the trial ought to have been received, and if given, would have entitled the plaintiff to recover. A promise to pay a debt, barred by the statute, revives the debt; and when the evidence of the debt is a negotiable note, which is subsequently transferred, the promise, although made to the payee, enures to the benefit of the holder, and may be proved by him in an action, in which no other cause of action is stated in the declaration or complaint than the note itself.
But when the promise of the debtor is to pay a debt that has been extinguished—a debt from which he has been wholly discharged—and whether by force of a legal proceeding, or by the voluntary act of the creditor, must be immaterial, the legal effect and legal consequences of the promise are substantially different. The promise does not, then, revive the original debt, nor, where the evidence of that debt is a negotiable note, does it enure to the benefit of a subsequent endorsee. The promise is then a new contract, creating a new and distinct cause of action; and in an action upon this contract, proof of the original debt is not otherwise important than as necessary to raise the moral obligation, which is the true consideration of the promise, and alone gives it validity.
The reasons for this distinction may not be obvious, and, when stated, may be thought technical or refined; but the cases are numerous in which they have been recognized and followed, and it may be said with truth, that no distinction is more clearly and fully established. The reasons upon which it is founded are, that the Statute of Limitations acts, not upon the contract, but upon the remedy alone. The debt subsists, although the right to maintain an action for its recovery, for the time, is gone. Hence, when a new promise has removed the bar that the lapse of time had alone created, the payment of the debt, as the original cause of action, may be again enforced. But the discharge of a debtor, under a bankrupt or insolvent law, and just as certainly by a release, acts upon the contract itself, and puts an end forever to the obli *300 gation .that it created. Hence it is a new debt that, in these cases, the new promise creates; and it is upon the promise, as a distinct and original agreement, that the action of the creditor, who seeks to enforce it, must be founded. It is owing to this distinction that, while an insolvent law, applicable to existing debts, as impairing the obligation of contracts, is unconstitutional and void, a law which, in relation to such debts, only shortens the period of limitation, as affecting the remedy alone, is constitutional and valid. (Sturges v. Crowninshield, 4 Wheat. 122; Hetch v. Hotchkiss, 7 John. C. R. 296; Dean v. Hewitt, 5 Wend. 262; 2 Esp. R. 936; Cowper, 544; Douglas, 192.)
What, then, are the consequences of this established distinction, in their application to the case before us ? They are these, that as the discharge or release of a debtor, by annulling the contract, extinguishes the debt, so when a negotiable note is the evidence of the debt, it extinguishes the note. It destroys forever its negotiability, and renders its subsequent transfer wholly void. As á subsequent endorsee acquires no title, he can maintain no action upon the note itself; and, unless the new promise, creating a new debt, was made to himself, he can maintain no action upon the promise, which cannot follow, as an incident, a note that has ceased to exist.
I shall refer to two or three decisions of our former Supreme Court, as sustaining and illustrating these positions.
The action in the case of Depuy v. Swart, (3 Wend. 135,) was brought by the plaintiff, as the holder, against the defendant, as the maker of a promissory note, payable to A. Robinson or bearer, and the defence was, the discharge of the defendant under the act then in force, granting relief in cases of insolvency. To meet this defence, the discharge having been proved, the payee of the note was called as a witness upon the trial, and proved, that the defendant, shortly after his discharge, and repeatedly thereafter, while he (the witness) was the holder of the note, and before its transfer to the plaintiff, had promised to pay the debt. The evidence was objected to, but was received by the Judge, who directed the jury to find a verdict for the plaintiff.
The case was before the court in term, upon a motion to set aside the verdict, and for a new trial; and the court, holding that *301 the plaintiff had no right to maintain the action, granted the motion.
Marcy, J., who, in a singularly able and lucid opinion, delivered the judgment of the court, after referring, as an authority, to an express decision of the Supreme Court of Massachusetts upon the same questions, (Baker v. Wheaton, 5 Mass. R. 509,) arrived at the conclusion, that the discharge of the defendant discharged the debt for which the note was given, and by destroying the legal existence of the note, put an end to its negotiable qualities.; that the plaintiff had, therefore, acquired no right, from the transfer to him, to maintain an action upon the note, and that an action upon the new promise of the debtor could be maintained only in the name of the creditor to whom it was made. Exactly the same question arose in the subsequent case of Moore v. Videle, (4 Wend. 420,) and the court, reaffirming its decision in Depuy v. Swart, held, that the negotiability of the note, upon which the suit was brought, was destroyed by the discharge of the maker under the insolvent act, and that its subsequent transfer gave no right to the person receiving it to maintain an action upon the note.
In the subsequent case of Dean v. Hewitt, (5 Wend. 257,) the action was by the endorsee against the maker of two promissory notes. The defence was, that the Statute of Limitations had attached, and this defence was overruled upon the trial by evidence of a new promise of the defendant made to the payee of the notes, before their transfer to the plaintiff, and within six years before the commencement of the action. The plaintiff, under the direction of the presiding Judge, obtained a verdict, which the court at General Term refused to set aside, and I refer to the decision as showing the existence and legal consequences of the distinction that has already been stated and explained. The counsel for the defendant, in moving for a new trial, relied upon the decision in Depuy v. Swart, and contended that it was just as applicable to a new promise to pay a debt, barred by the statute, as to a similar promise to pay a debt, barred by an insolvent’s discharge, insisting that, in both cases, the new promise is the true and sole cause of action, and should be declared on as such. The court thought otherwise, holding, that the statute applies to the remedy alone, and that it is this that the new promise continues or revives; *302 and Marcy, J., who again delivered its judgment, said, “ that a demand, the remedy for the recovery of which has been continued or revived by a new promise, is precisely the same as before the statute had attached, and when it is evidenced by a negotiable instrument, the negotiability of the instrument is coexistent with the demand,” evidently meaning, that, in this case, the promise that revives the remedy, follows, and is attached to the instrument, and enures to the benefit of its holder.
It is needless to point out the exact resemblance between the evidence that was improperly received in the case of Depuy, and that which was offered and rejected in the case before us. It is manifest, that there is no other distinction, than that which exists between the extinguishment of a debt by a legal proceeding, and its extinguishment by the voluntary act of the creditor. It was the actual extinction of the original debt, however, that, in the cases of Depuy v. Swart and Moore v. Viele, was the sole ground of the decision, and hence, where that extinction is proved, it is plainly immaterial by what means it was effected. By whatever means it may be effected, its legal consequences must be the same. Hence, if the plaintiff, in each of those cases, had no right to maintain the action, by availing himself of a promise made to the payee of the note in suit, before its transfer to himself, it seems to us a necessary conclusion, that no such right can be field to have been acquired by the plaintiff in the present action. As the proof offered would not have shown, that the transfer of the note gave him the right, it was properly rejected.
It is true, that the cases of Depuy v. Swart, and Moore v. Viele, were decided before the Code was enacted, and, consequently, when a new debt, created by a new promise of a discharged debtor was not assignable, so as to enable an assignee to maintain an action, in his own name for its recovery; and this circumstance, it may be said, creates a distinction, that renders the decisions, in those cases, no longer applicable as authorities. But we do not think so. There is no intimation in either of the cases, that in the opinion of the court, the plaintiff, by the transfer of the note in suit, had acquired an equitable title to the new debt, which the promise of the defendant had created, so as to entitle him to bring an action for its recovery, in the name of the payee to whom the promise was made. There is no intimation, that a transfer, that *303 the court held to be void, was yet effectual to pass the debt. Although, since the Code, the assignee of a debt, no matter how or when created, may maintain an action, in his own name, for its recovery, we do not at all understand, how the attempt to transfer a debt, that had ceased to exist, can be received as evidence of the assignment of a debt subsequently created. The transfer, if void at all, is void altogether. We have seen that a debt created by the new promise of a discharged debtor, is not an incident of a negotiable note, by which the original debt was evidenced, but is a substantive and independent cause of action, and we are, therefore, clearly of opinion, that it is only by a distinct and independent act, expressly referring to the debt thus created, that it can be assigned or transferred.* In this case, no such assignment was offered to be proved, or is pretended to have been made.
But had proof of such an assignment been offered or given, it seems to us certain that it would not have enabled the plaintiff to recover in the present action. As the debt created by the promise of a discharged or released debtor, although founded on his moral obligation to pay a former, is a new and substantive cause of action, it must be stated as such in the complaint, whether the action is brought by the creditor to whom the promise was made, or by his assignee. Here, there is no such statement in the complaint, for the action is brought by the plaintiff, not as assignee of-a subsisting debt, but as endorsee of an extinguished note. His title to the note is the only cause of action stated in the complaint.
It has, indeed, been insisted, that if the plaintiff was entitled to the benefit of the promises made by the defendant to the payees of the note, the variance that would have arisen from the proof that was offered, might, under the provisions of the Code, have been justly disregarded. We cannot so hold. The only cause of action alleged in the complaint, was disproved, in its entire scope and meaning, (Code, § 191,) and the proof offered, if effectual for any purpose, would have substituted a new cause of action, which the defendant had not been required to answer, and to which the defence, in his answer, was not at all directed. Even, if the proof *304 would have shown a right of action in the plaintiff, the Judge, under the pleadings, had no power to receive it, nor, as we think, without the consent of the defendant, could he have amended the pleadings for the purpose of its reception.
Although, as the case stood upon the trial, the jury might very properly have been instructed to find a verdict for the defendant, the Judge committed no error, which the plaintiff can allege, in dismissing the complaint, and a judgment dismissing it, with costs, must, therefore, be entered.
Judgment accordingly.

 Vide note of editor to the case of Depuy v. Swart, (9 Wend. 2d ed. 241,) where an opposite opinion as to the effect of a transfer of a negotiable note, since the Code, appears to be expressed.