### SAMUEL J. CLARKE *vs.* JOHN TAPPIN.

The defendant had been indebted to the plaintiff, by the note of a firm of which he was a member, and at his request the plaintiff had discharged him from the debt by an instrument under seal. The plaintiff claimed that, before the discharge was executed, the defendant made a parol promise, that, if he would give the discharge, he would within two years pay the amount due by the note with

interest. Held, in an action brought on this promise, that parol evidence was admissible to prove it.

The court regarded the written instrument as given in pursuance of the parol agreement, and as performance of it on the part of the plaintiff, and therefore the parol promise of the defendant as not merged in or contradictory to the written instrument.

ASSUMPSIT. The fourth count of the declaration, which was the only one relied on, alleged that on the 18th of September, 1850, the plaintiff, and Richard M. Clarke, since deceased, were co-partners under the name of Clarke & Co., and that at that time the defendant and one Henry C. Coggeshall were partners under the name of Coggeshall & Tappin, and were indebted to Clarke & Co. by a note executed by the firm, dated November 24, 1845, for the sum of $980.39, payable four months after date ; and that on the 18th of September, 1850, the defendant at New York City, in consideration that the plaintiff, in behalf of the firm of Clarke & Co., would discharge him from all claims of that firm upon him as a member of the firm of Coggeshall & Tappin, promised that he would within two years thereafter, pay him the sum of $980.39, with interest at the rate of seven per cent. from the time of the maturity of the note ; and that thereupon the plaintiff, in behalf of the firm of Clarke & Co., executed and delivered to the defendant a discharge of all claims of that firm against the defendant as a member of the firm of Coggeshall & Tappin ; but that, though the two years had long since passed, the defendant had never paid the money promised. The writ was dated August 23d, 1862.

The case was tried to the jury in the superior court on the general issue, before *Park, J.*

On the trial the plaintiff exhibited the original note of Coggeshall & Tappin to Clarke & Co., which was as follows :—

" $980.39. New York, November 24, 1845. Two months after date we promise to pay to the order of Messrs. Clarke & Co. nine hundred and eighty dollars and thirty-nine cents, value received. COGGESHALL & TAPPIN." It was admitted by the plaintiff that this was the only debt of any kind which the firm of Coggeshall & Tappin at the time of the release, or

ever, owed the firm of Clarke & Co. The discharge executed by the plaintiff was also proved, and was as follows :—

" In consideration of the sum of one dollar to me in hand paid by John Tappin, of the late firm of Coggeshall & Tappin, of the city of New York, I do on behalf of the firm of Clarke & Co., of New Haven, Connecticut, hereby release, quitclaim, and forever discharge the said Tappin of and from all debts, dues, claims and demands, which the said firm of Clarke & Co. have against said Tappin, as a member of the late co-partnership firm of Coggeshall & Tappin. Dated September 18th, 1850.          SAMUEL J. CLARKE. (Seal.)

The plaintiff offered parol evidence to prove that some time prior to the 18th of September, 1850, the defendant made several applications to him to release him from the claim of the firm of Clarke & Co. against the firm of Coggeshall & Tappin, which latter firm, it was admitted, had failed some time before ; and finally on that day promised that if the plaintiff would execute the discharge, he would within two years pay the amount of the note, with interest thereon at seven per cent from the maturity of the note ; and that upon this, and in consideration of this promise, he executed and delivered to the defendant the discharge above set forth.

The defendant objected to the admission of parol evidence to prove the promise of the defendant, on the ground, 1st, that the discharge was, on its face and by its terms, an absolute discharge, without any qualification or condition, and that such promise, if ever made, being anterior to or cotemporaneous with the discharge, was merged in it as the final agreement of the parties ; and 2d, because it contradicted, varied and nullified the discharge, and rendered it wholly inoperative, leaving the defendant liable for the very debt it purported to release. But the court overruled the objection, and admitted the evidence for the present, to be finally disposed of in the charge to the jury.

The testimony of the plaintiff was the sole evidence of the promise of the defendant, no other person having been present at the time. The defendant in his testimony wholly denied the making any such promise, and testified that the discharge was executed by the plaintiff, (having been previously pre-

pared by the defendant and carried to the plaintiff for execution,) upon the sole consideration of one dollar, which he paid to the plaintiff at the time.

Upon the argument of the cause the counsel for the defendant requested the court to instruct the jury that, as the promise alleged was to pay the same debt which was discharged, parol evidence of the promise was not admissible, and that, as no other evidence was offered, the verdict must be for the defendant. The court did not so charge, but *pro forma* instructed the jury that the evidence was admissible, and that if upon it they should find that the defendant did in fact make the promise, on condition that the plaintiff would execute the release, there was a good consideration for the promise and the plaintiff would be entitled to recover.

The jury returned a verdict for the plaintiff for the amount of the note, with interest at seven per cent from the time of the maturity of the note. The defendant moved for a new trial.

*Beach* and *Sheldon*, in support of the motion.

1. The only question upon the motion is, whether the parol evidence of the plaintiff, to prove a promise of the defendant, contemporaneous with the discharge of the debt, to pay the same debt that was discharged, was admissible. It will not do to assume that there was a parol promise, and then argue the sufficiency of its consideration and the effect of the discharge upon it. The only issue between the parties is, *was* there a parol promise ? In other words, was the promise proved by evidence admissible to prove it ?

2. This precise question, arising upon this very discharge, between these same parties, and upon this same debt, has been adjudicated by the courts of the state of New York, and the " *lex loci contractus* " must govern its decision. Oakley, C. J., in the case of *Stearns* (who was assignee of the present plaintiff) v. *Tappin*, 5 Duer, 298, says :—" The proof that was offered, so far as it tended to show that the release was founded on any other consideration than that which it states, as contradicting both the terms and the legal effect of the instrument,

was properly rejected. The offer to prove that *prior to the execution of the release, and as a consideration for its execution, Tappin promised to pay the note within two years,* was plainly of this character." In another case, discussing the same principle, *McCrea* v. *Purmont,* 16 Wend., 473, Cowen, J., says :—" A *release* can not be contradicted or explained by parol, because it extinguishes a pre-existing right, but no *receipt* can have the effect of destroying *per se* any subsisting right—it is only *evidence* of a fact. The *payment* of the money discharges or extinguishes the debt; a receipt for the payment does not pay the debt, it is only evidence that it has been paid. *Not so of a written release.* It is not only *evi dence* of the extinguishment, but is the *extinguisher itself.*"

3. The law of New York upon this subject is coincident with the common law. The plaintiff admits the rule excluding parol evidence to vary written contracts, but insists that this evidence was admissible, because the release of the debt constituted the sole consideration for the defendant's parol promise to pay the amount of the same debt, and therefore the more valid the discharge the more valuable the consideration. But this is the precise claim made and overruled in *Stearns* v. *Tappin,* unless indeed the court can see and recognize a distinction between " a debt " and the " amount of a debt." If this attempted evasion of the rule is successful, the ingenuity of the profession may be defied to draft a valid release or obligation of any kind. Covenants and estoppels may be inserted, but by the solvent power of this proposition they are all converted into valid considerations for a contemporaneous parol promise that the covenants should never be enforced and the estoppels never relied on. Among the multitude of cases recognizing and applying the admitted rule, there is not one in which its application could not have been evaded by the easy process of moulding the proffered evidence into the form of this proposition. " Where a release under seal is given to one of two joint debtors, and the other [still more the releasee] being sued, pleads the joint indebtedness and the release, it is no answer to say that the release was made at the defendant's request and in consideration that

he thereupon promised to remain liable for the debt and unaffected by the release, for this would be a parol exception to a sealed instrument." 1 Parsons on Cont., 23 ; *Brooks* v. *Stuart*, 9 Ad. & El., 854 ; *Cocks* v. *Nash*, 9 Bing., 341 ; *Harris* v. *Goodwin*, 2 Man. & Grang., 405 ; *Deland* v. *Amesbury Manufacturing Co.*, 7 Pick., 244. Here both contracts purport to speak about the same thing, the continuing liability or want of liability on the part of Tappin to pay this identical debt. The written contract says the liability of Tappin to pay this debt shall forever cease and be at an end ; the parol contract says his liability to pay this debt shall not cease and be at an end, but shall continue and be enforced, unless he voluntarily pays it within two years. " Two contracts, the one in writing and the other in parol, made between the same parties at the same time, in regard to the same subject matter, and for the same purposes, but variant in their respective stipulations, can not stand and be enforced together in the same suit in a court of law. In such case the law wisely determines to rely upon the written instrument alone, as the true and only safe expositor of the intention and final understanding and agreement of contracting parties." Sanford, J., in *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 29 Conn., 381. The plaintiff insists that there is no inconsistency between the proffered evidence and the release, because the release only discharges Tappin from his liability on this debt as a member of the firm of Coggeshall & Tappin, and the parol promise to pay the same debt, or the amount of the same debt, was an *individual* promise. But it discharged the defendant from all there was in existence against him, that is, his individual liability to pay this debt. It is true that liability accrued to him *because* he was (as he still is, and always will be,) " a member of the late firm." But it was not a mythical, intangible liability existing simply in contemplation of law as a shadowy appurtenant to his membership in a late firm, but a tangible, substantial, individual liability. If the words, " as member of the late firm," had been omitted, it is conceded the release would have been individual. But the addition of these words simply identifies the only object on which the discharge *could* operate.

To construe these words as a limitation and as exclusive of something else, is to fall into the absurdity of attempting to exclude that which was non-existent. If it is permitted to the plaintiff to harmonize two antagonistic contracts by the theory that although the *debt* is the same the *parties* are different, then the same theory would be open to the defendant, and if the negotiations had resulted in his giving a bond " as member of the late firm," he could with equal success avoid it by evidence of a parol agreement with him as an *individual,* that it should not be enforced. Could such a plea be sustained ? Then the converse of the proposition is equally unfounded. The statute law of New York is decisive upon this point, for it expressly provides " that when any copartnership firm shall be dissolved by mutual consent or otherwise," the discharge by a creditor of one of the partners shall not operate to discharge the firm, but only as an individual release " exonerating him from all and every *individual* liability," and shall not be construed " to impair the right of the creditor to proceed at law or in equity against the members of such copartnership firm as have not been discharged," and " they shall not set up the discharge of one individual as a discharge of the other copartners, unless it shall appear that all were intended to be discharged." 2 Rev. Stat. of N. York, 61.

4. It is claimed that the rule does not apply where the whole contract is not in writing, and *Collins* v. *Tillou,* 21 Conn., 321, and kindred cases are cited. We reply:—1st. Those cases are direct authorities for excluding the evidence. The only mode in which any court has attempted to extricate the consideration clause in a deed from the rule, has been by denying to it the legal effect of a release, conceding, as Judge Ellsworth does in *Collins* v. *Tillou,* that if its legal effect was that which confessedly belongs to this instrument the application of the rule could not be doubted. 2d. The proposition that the parol evidence is admissible as confronted with the written contract, *because* the whole agreement was not in writing, either extinguishes the rule in *all* cases, or begs the question in *this* case. The policy of the law excludes the evidence for the single reason that it seeks to do the very thing

which it is assumed justifies its admission, that is, to set up a contract not embraced in the writing. The defendant insists that the writing contains the whole contract. The plaintiff offers to prove it was partly in parol. The only question is will the law permit parol evidence as against such a writing. To admit the evidence and give as a *reason* that the whole contract was *not* in the writing, would be to end the controversy in a way more summary than logical.

*Blackman* and *L. H. Bristol*, with whom was *E. Seeley* of New York, contra.

1. Admitting the general principle that parol evidence is inadmissible to contradict, vary or control a cotemporaneous written instrument, we claim that it has no application to the present case, because the promise in question does not contradict the release. The only question therefore to be discussed on this point of the case is, what was the *effect* of the release ? Did it or not operate to discharge the promise which was made in consideration of it ? If it did not the plaintiff is entitled to retain his verdict. The position of the defendant is, that where a promise is the consideration of a discharge, and the discharge is given, the discharge operates to cut off the promise. Such a doctrine contravenes every principle of justice. Suppose that *A* owes *B* different sums, borrowed at different times, and says to *B*, " Give me a discharge from my debts and I will pay you $500." *B* accepts the proposal and gives the discharge. Then, according to the principle claimed, *A* can turn on *B* and say, " Get your $500 if you can ; I have your discharge releasing me from any legal obligation to pay it." But this claim of the defendant violates not only the principles of natural justice, but also the well-settled rule of law in our state. " Where in settlement of a controversy one party gives the other an obligation for a certain sum in satisfaction of his claim, and the obligee at the same time gives a discharge of all demands, this will not release such obligation." 1 Swift's Dig., 301. "A promise made in consideration of a discharge given, is not cut off by the discharge." *Allen* v. *Frisbee*, 2 Root, 76. Such is the general doctrine as estab-

lished by our courts in cases of this kind. The present case
however is much stronger, for the release shows upon its face
that it was not intended to discharge the promise upon
which the suit is founded. By its terms it provides that
the defendant shall be discharged from all claims for which he
is liable " *as a member of the firm of Coggeshall & Tappin;*
that is, it releases Tappin from those debts, and those only,
for which he was liable *jointly* with Coggeshall. Suppose
that previous to the giving of the release Tappin had bor-
rowed $500 of the firm of Clarke & Co. on his individual
account. Can it be pretended that this release could be
pleaded in bar to an action brought against him by Clarke &
Co. for money lent? Most evidently not. It does not touch
his *individual* liabilities. It leaves them as they are, and con-
cerns itself wholly with his liabilities as a member of the part-
nership. The test is, whether it is an *individual* liability or a
*partnership* liability. Whether it is an individual liability
resulting from the assumption of a partnership debt, or an
individual liability springing from an individual separate
transaction, can make no difference. The proof offered and
admitted was of a distinct promise made by Tappin *alone*,—a
new undertaking entered into by him, for the fulfillment of
which he alone was liable. By the terms of the transaction a
new and valid contract is substituted for the old one, which is
thereby discharged. Was it not competent for the parties to
put an end to the old contract by the substitution of a new
one in lieu of it? Suppose $A$ owes $B$ $100 by note, and says
to $B$ if you will release me from that note, I will pay you $100.
Is not $A$ bound to pay that $100? It is no answer to say
that the new liability is to pay the same amount expressed in
the old one. *Miller* v. *Watson*, 7 Cowen, 39. Again, the
effect of the release was to discharge *Coggeshall* as well as
Tappin from debts due Clarke & Co., for which they were each
liable as members of the firm; so that, in fact, the release is
nothing more than a discharge of Coggeshall & Tappin from
debts due Clarke & Co. It discharges each of the firm from
all debts due from the firm. How can it affect any individual
liability? The fallacy of the defendant consists in treating

Clarke *v.* Tappin.

this promise of Tappin's as if it was a claim upon Coggeshall & Tappin.

This view of the effect of the release is sustained by numerous authorities. *Lanyon* v. *Davey,* 11 Mees. & Wels., 218 ; 2 Saund. Pl. & Ev., 760, 763 ; *Cocks* v. *Nash,* 4 Moore & Scott, 162 ; *Reading R. R. Co.* v. *Johnson,* 7 Watts & Serg., 317 ; *Davidson* v. *M' Gregor* 8 Mees. & Wels., 755 ; *Bain* v. *Cooper,* 9 id., 701. " Great liberality is allowed in construing releases ; the intent is to be sought for in the whole and every part of the instrument, and where general words are used, if it appears by other clauses that it was the intent to limit the discharge to particular claims only, courts in construing it will so limit it." Shaw, C. J., in *Dunbar* v. *Dunbar,* 5 Gray, 104. In the present case, there is not the slightest evidence of any intent to discharge Tappin from his *individual* liabilities. 1 Swift's Dig., 300 ; 2 Saund. Pl. & Ev., 761 ; *Thorpe* v. *Thorpe,* 1 Ld. Raym., 235 ; *Cole* v. *Knight,* 3 Mod., 277 ; *Butcher* v. *Butcher,* 4 Bos. & Pul., 113 ; *Lyman* v. *Clark,* 9 Mass., 235 ; *Tryon* v. *Hart,* 2 Conn., 120. But further, the release did not discharge the promise, because the promise did not become operative until after the execution of the release. The motion shows that the promise of Tappin to pay the amount of the note, was made on condition that he would execute the release. The execution of the release was therefore a condition precedent, without which the promise did not become binding. *Collins* v. *Gibbs,* 2 Burr., 899 ; 2 Parsons on Cont., 220 ; *Thorpe* v. *Thorpe,* 1 Ld. Raym., 662 ; *Radburn* v. *Morris,* 4 Bing., 649 ; *Wilson* v. *Hirst,* 4 Barn. & Adol., 767 ; *Pierce* v. *Parker,* 4 Met., 80.

There is however another ground on which we can rest our claim that parol evidence was properly admitted to show the promise made by Tappin in consideration of the release given by Clarke & Co. The evidence was of a promise made upon the condition of the giving of the release. It is admitted that the one act was the consideration for the other. The evidence of the promise was therefore properly admitted as showing the *true consideration of* the release. It is a well-settled rule of law that the clause of receipt or acquittance may be

inquired into, except for the purpose of changing the effect of the instrument, so that the amount of consideration may be questioned and the true consideration shown by parol. *Hannah* v. *Wadsworth*, 1 Root, 458; *Cone* v. *Tracy*, id., 479; *Sparrow* v. *Smith*, 5 Conn., 113, 117; *Belden* v. *Seymour*, 8 Conn., 304; *Meeker* v. *Meeker*, 16 Conn., 383; *Bullard* v. *Briggs*, 7 Pick., 533; *Wilkinson* v. *Scott*, 17 Mass., 249; *Morse* v. *Shattuck*, 4 N. Hamp., 229; *Pritchard* v. *Brown*, id., 397; *Shepard* v. *Little*, 14 Johns., 210; *Whitbeck* v. *Whitbeck*, 9 Cowen, 266; *McCrea* v. *Purmont*, 16 Wend., 460; *Brown* v. *Slater*, 16 Conn., 192; *Baldwin* v. *Carter*, 17 id., 201; *Spencer* v. *Higgins*, 22 id., 521; *Redfield* v. *Haight*, 27 id., 31.

But again, the evidence in question was properly admitted, because the rule excluding parol evidence does not apply to a written instrument given in pursuance of a parol agreement to give such instrument. 2 Phil. on Ev., (C. & H. ed.,) note 494; 1 Greenl. Ev., § 284 *a*; 1 Swift Dig., 181; *Crocker* v. *Higgins*, 7 Conn., 342; *Adams* v. *Gray*, 8 id., 11; *Collins* v. *Tillou*, 26 id., 368; *Gerrish* v. *Washburn*, 9 Pick., 338.

2. Supposing the evidence to be admissible there was clearly a sufficient consideration, in the execution of the discharge, to support the promise to pay the debt. 1 Parsons on Cont., 357, 365; *Snevilly* v. *Read*, 9 Watts, 396; *Hinman* v. *Moulton*, 14 Johns., 466; *Lyth* v. *Ault*, 11 Eng. L. & Eq. R., 580; *Cuyler* v. *Cuyler*, 2 Johns., 186; *Morton* v. *Burn*, 7 Ad. & El., 19; *Atkinson* v. *Bayntun*, 1 Bing., *N. C.*, 444.

DUTTON, J. The plaintiff in support of his declaration offered to prove that prior to the 18th of September, 1850, the firm of Clarke & Co., of which he was a member, held a promissory note of the form following, to wit:—" New York, November 24, 1845. Two months after date we promise to pay to the order of Messrs. Clarke & Co., nine hundred and eighty dollars, value received. Coggeshall & Tappin;" and that in consideration that the plaintiff promised to discharge him from his liability on said note he promised the plaintiff to pay

him within two years, the amount of said note ; and that there-upon the plaintiff gave to him a writing of the form following, to wit :—" In consideration of the sum of one dollar to me in hand paid by John Tappin, of the late firm of Coggeshall & Tappin, of the city of New York, I do in behalf of the firm of Clarke & Co., of New Haven, Connecticut, hereby release, quitclaim and forever discharge the said John Tappin of and from all debts, dues, claims and demands which the said firm of Clarke & Co. have against the said John Tappin, as a member of the late co-partnership firm of Coggeshall & Tappin. Dated September 18, 1850. SAMUEL J. CLARKE, (Seal.)"

The defendant objected to the admission of this evidence, claiming that it was excluded by the written instrument ; but the court admitted it. The defendant further claimed that as this was the only evidence by which the fourth count could be sustained, which was not denied, the court ought to instruct the jury to find on this count for the defendant ; but the court refused so to charge the jury.

Were these rulings correct ? We think they were.

The defendant objected to the evidence offered, in the first place, on the ground that it contradicted or varied the writ-ten instrument. This objection can not prevail. The rule is undoubtedly well-settled, that where a contract is reduced to writing parol evidence is inadmissible to contradict or vary it. The foundation of the rule is, that the parties have designedly put the agreement in a more certain and reliable form than it was while it was merely oral. But to give the writing this conclusive effect the agreement itself must be reduced to writing. The rule evidently does not apply where the writing is merely given in performance of the contract. In the present case, the promise on the part of the plaintiff was to give the discharge. In giving this instrument he only did what he agreed to do. The defendant only accepted this performance as he was bound to do. It was not the object of the parties to provide better evidence of what the original agreement was. In *Collins* v. *Tillou*, 26 Conn., 368, Collins agreed by parol to deed land to Tillou, which the latter agreed to sell, and account to Collins for the avails. Collins and

wife then gave a deed of the land to Tillou, containing the expression, " for the consideration of a valuable sum in dollars and other considerations received to our full satisfaction " of the grantee. The suit was brought on Tillou's parol agreement to account. The defendant's counsel made the same objection that is made here, insisting that by the deed the contract was reduced to writing. Ellsworth, J., in giving the opinion of the court (page 374,) says:—" The error of Tillou's counsel is, that they suppose the contract in dispute to be the contract of sale in the deed, which is not so. The contract in dispute was made before the deed and not by it or in it. The deed only follows up the contract by carrying it into execution, and is both subsequent to and in pursuance of it." That case is stronger than this, for a deed has much more the form and effect of a mutual contract than this discharge. To hold that a deed or a release given in pursuance of a verbal contract should exclude parol evidence of what the contract was, would in many transactions work the grossest injustice. It would convert a mutual contract into a one-sided one, and relieve one of the parties from fulfilling his obligations. Suppose *A* should agree to sell a house to *B*, and *B* should agree to give a note for it for one thousand dollars payable in one year, the ordinary course of business would require of *A* to give to *B* a deed of the house with a consideration expressed of one dollar or one thousand dollars received to his full satisfaction of the grantee. What a reproach upon the law it would be if *B* could take the deed, and then say, the only contract that I acknowledge is the written instrument and from that it does not appear that I am under obligation to do or to pay anything ? The rule of evidence on which the defendant relies, is, when properly applied, one of the most useful and valuable in the law ; but when it is carried to an extreme, and made to override all the maxims of common sense and the universal impressions of men in the transaction of business, it becomes extremely impolitic and mischievous.

In the second place, the defendant puts substantially the same objection in a somewhat different form. He insists on the well-settled **rule of law,** that where there is an agreement

Clarke *v.* Tappin.

in writing, all previous representations and stipulations relating to the subject-matter of it must be regarded as merged in it. This is merely reversing the order of considering the same transaction, commencing here with the instrument. Here is the same fatal error of regarding a deed or a release which is given merely to carry into effect the stipulations on one side of a mutual agreement as containing in itself the whole of a mutual agreement. What does the discharge in this case bind the releasee to do? Clearly nothing. To ascertain what he was to do we must go back to the original parol agreement.

In the third place, it is said that here is an acknowledgement in a sealed instrument that the releasee has performed all that he bound himself to do, and that this can not be contradicted. We admit that there are a number of English and some American cases which sanction, what appears to us the absurd doctrine, that if a deed contains the expression of a consideration received to the full satisfaction of the grantor, even although the deed is not signed by the grantee, the only remedy for the grantor to recover the real consideration is a bill in equity to correct the instrument. But these cases do not show and can not show how a bill in equity can be made available where no mistake has been in fact made, but the parties have understandingly had the instrument drawn precisely as they intended to have it. Nor do they explain away the folly of a rule which would under such ordinary circumstances drive a party into a court of equity. We are happy to be able to say that this doctrine has been long since exploded in this state, and this view has been sustained in other states. The insertion of such a consideration is considered as being made merely for the purpose of giving full effect to the instrument. *Belden* v. *Seymour*, 8 Conn., 304; *Meeker* v. *Meeker*, 16 id., 383; *Collins* v. *Tillou*, 26 id., 368; *Clapp* v. *Tirrell*, 20 Pick., 247; *McCrea* v. *Purmont*, 16 Wend., 460.

Lastly, it is strenuously insisted that there is such an inconsistency and repugnancy between the discharge and the promise offered to be proved, that the court ought to exclude the evidence. It is said the plaintiff, with the same breath, attempts to prove that the debt has been extinguished and is

still in existence. This objection at first appears somewhat plausible, but a little examination will show that it is a mere play upon the word *debt*. What was the defendant discharged from? A partnership note to pay a certain sum of money already due. What is he sued on? A verbal individual promise to pay a sum of money of equal amount with the note within two years. The two obligations are far from being identical. It could not be contended for a moment that the discharge of the partnership note, so far as the defendant was concerned, was not a sufficient consideration for any legal promise. What illegality is there in such a verbal promise? Are not parties competent to put the liabilities which exist between them in new forms? And if they agree to do it, and one of them in good faith gives up his original claim, is he to be told by a court of justice that he has lost all claim and is without remedy? In the case of *Collins* v. *Tillou* this objection was presented with great force by the late Gov. Baldwin. 26 Conn., 372. It had more point in that case than it has in this. He argues as follows:—" He (Collins) avers in his deed that he has bargained and sold the land to Tillou, but he was permitted to prove by parol that he did not bargain and sell the land at all, and that he by his deed only constituted Tillou his agent to sell the land. In the deed he affirms that he has conveyed the land to Tillou for Tillou's use and behoof, but he was permitted to show by parol that he conveyed it to Collins' use and behoof. By his deed he covenanted to warrant and defend the land to Tillou against all claims and demands whatsoever, but the court allowed him to make claim to the land himself upon mere parol testimony." Thus the counsel made out a plausible case of the inconsistency of a man's deeding away land and still claiming the same land. But the court could discover no real inconsistency in the case. To their view it was a simple case of a deed of land by one man to another, for which the grantee, instead of paying for the land, promised to sell and account for it. Such considerations may be entitled to great weight on the question of fact whether the parol promise was made or not, but are of no account on the question of law.

We have been referred to the case of *Stearns* v. *Tappin*, 5 Duer, 298. That action was brought on the company note itself. The plaintiff undertook to avoid the effect of the discharge in barring a recovery by offering in evidence the parol promise on which the present suit was brought. But the court very properly excluded it. The plaintiff in that case attempted to nullify the discharge. In this case he relies upon its efficacy. The decision of that case clearly does not contradict the views which we have expressed. The *obiter dictum* of Duer, J., as to the effect of the expression of a consideration, weighs nothing with us in opposition to the express decisions of this court before referred to upon the same point.

A new trial is not advised.

In this opinion the other judges concurred.